FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 20, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| GEANNIE H.,[1] | No. 2:23-CV-00182-MKD |
| Plaintiff, | ORDER AFFIRMING THE COMMISSIONER'S DECISION |
| v. | **ECF Nos. 7, 9** |
| MARTIN O'MALLEY, COMMISSIONER OF SOCIAL SECURITY, [2] | |
| Defendant. | |

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley is substituted for Kililo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

ORDER - 1

Before the Court are the parties' briefs.  ECF Nos. 7, 9.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, the Court affirms the Commissioner's decision.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

ORDER - 2

1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. §§ 404.1502(a), 416.902(a).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in

ORDER - 3

any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§

ORDER - 4

404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination,

the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that 1) the claimant is capable of performing other work; and 2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On February 10, 2017, Plaintiff applied both for Title II disability insurance benefits and Title XVI supplemental security income benefits alleging a disability onset date of May 1, 2016. Tr. 1086, 73-74, 223-31. The applications were denied initially and on reconsideration. Tr. 129-46, 148-61. Plaintiff appeared before an administrative law judge (ALJ) on January 8, 2020. Tr. 34-72. On January 23, 2020, the ALJ denied Plaintiff's claim. Tr. 12-33. Plaintiff appealed the denial,

ORDER - 6

which resulted in a remand from this Court.  *See Heitschmidt v. Kijakazi,* No. 1-20-cv-3160-LRS (E.D. Wash. Sept. 9, 2021) (ECF No. 21).  On January 9, 2023, Plaintiff appeared for a remand hearing.  Tr. 1134-73.  On March 15, 2023, the ALJ again denied Plaintiff's claim.  Tr. 1083-1117.

At step one of the sequential evaluation process, the ALJ found Plaintiff, who met the insured status requirements through June 30, 2024, has not engaged in substantial gainful activity in a consecutive 12-month period since May 1, 2016. Tr. 1089.  The ALJ noted Plaintiff had multiple quarters during which she earned over the substantial gainful activity threshold.  *Id.*  At step two, the ALJ found that Plaintiff has the following severe impairments: lumbar degenerative disk disease, obesity, hypertension, obesity, migraine headaches, fibromyalgia, sleep apnea, diabetes, depression, and anxiety disorder.  Tr. 1090.

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  *Id.*  The ALJ then concluded that Plaintiff has the RFC to perform light work with the following limitations:

> [Plaintiff] is limited to occasional climbing of ramps or stairs, ladders, ropes or scaffolds.  She can occasionally balance, stoop, kneel, crouch, and crawl.  She must avoid concentrated exposure to nonweather related extreme cold, wetness, humidity, excessive industrial level vibration, respiratory irritants, and hazards.  She is limited to work with simple, repetitive tasks and she can have occasional, superficial interaction with the public.

ORDER - 7

Tr. 1094.

At step four, the ALJ found Plaintiff is unable to perform any of her past relevant work. Tr. 1106. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as routing clerk, small products assembler, and marker. Tr. 1107. Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of May 1, 2016, through the date of the decision. Tr. 1108.

Per 20 C.F.R. §§ 404.984, 416.1484 the ALJ's decision following this Court's prior remand became the Commissioner's final decision for purposes of judicial review.

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated Plaintiff's symptom claims; and

2. Whether the ALJ properly evaluated the medical opinion evidence.

ECF No. 7 at 1-2.

ORDER - 8

# DISCUSSION

## A. Plaintiff's Symptom Claims

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting her symptom claims.  ECF No. 7 at 4-16.  An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms.  SSR 16-3p, 2016 WL 1119029, at *2.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (quotation marks omitted).  "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted).  General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims.  *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996); *Thomas v.*

1   *Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently

2   explain why it discounted claimant's symptom claims)).  "The clear and

3   convincing [evidence] standard is the most demanding required in Social Security

4   cases."  *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v.*

5   *Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

6          Factors to be considered in evaluating the intensity, persistence, and limiting

7   effects of a claimant's symptoms include: 1) daily activities; 2) the location,

8   duration, frequency, and intensity of pain or other symptoms; 3) factors that

9   precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

10  side effects of any medication an individual takes or has taken to alleviate pain or

11  other symptoms; 5) treatment, other than medication, an individual receives or has

12  received for relief of pain or other symptoms; 6) any measures other than treatment

13  an individual uses or has used to relieve pain or other symptoms; and 7) any other

14  factors concerning an individual's functional limitations and restrictions due to

15  pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§

16  404.1529(c), 416.929(c).  The ALJ is instructed to "consider all of the evidence in

17  an individual's record," to "determine how symptoms limit ability to perform

18  work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

19         The ALJ found that Plaintiff's medically determinable impairments could

20  reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's

ORDER - 10

statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence.  Tr. 1095.

### 1. Lack of Treatment/Non-Compliance

The ALJ found Plaintiff's claims of disabling symptoms were inconsistent with Plaintiff's minimal mental health treatment and lack of treatment for physical conditions.  Tr. 1095-98.  An unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be considered when evaluating the claimant's subjective symptoms.  *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).  And evidence of a claimant's self-limitation and lack of motivation to seek treatment are appropriate considerations in determining the credibility of a claimant's subjective symptom reports.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001).

When there is no evidence suggesting that the failure to seek or participate in treatment is attributable to a mental impairment rather than a personal preference, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the alleged severity of complaints.  *Molina*, 674 F.3d at 1113-14. But when the evidence suggests lack of mental health treatment is partly due to a claimant's mental health condition, it may be inappropriate to consider a claimant's lack of mental health treatment when evaluating the claimant's failure to participate in treatment.  *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).

ORDER - 11

Social Security Ruling 16-3p instructs that an ALJ "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." SSR 16-3p at *8 (March 16, 2016), *available at* 2016 WL 1119029.

While Plaintiff alleges significant limitations due to her mental health symptoms, the ALJ found such allegations were inconsistent with Plaintiff's lack of mental health treatment. Tr. 1095-96. Plaintiff saw a psychologist for approximately one year in 2019 to 2020, and then returned for two to three sessions in 2021 after the death of a family member. Tr. 1095 (citing Tr. 2070). Plaintiff returned in January 2022 for two sessions, reporting increased depression. Tr. 1096 (citing Tr. 2013-14). Plaintiff did not seek mental health treatment after February 2022, and reported she was doing well and without depression symptoms in March 2022. *Id.* (citing Tr. 2113). Plaintiff testified she did not have treatment after 2022 because she had been out of the state, however, Plaintiff maintained treatment for her physical symptoms, and she did not continue the phone mental health appointments she previously attended. Tr. 1096.

The ALJ also found Plaintiff's lack of treatment for some of her physical conditions was inconsistent with her allegations of disabling physical symptoms. Tr. 1096-98. Plaintiff was diagnosed with sleep apnea, and reported the condition

ORDER - 12

was well-controlled with a CPAP, but Plaintiff was not compliant with CPAP usage.  Tr. 1097 (citing Tr. 1746-50).  Plaintiff contends she was not able to use a CPAP machine consistently due to a lack of stable housing but does not offer explanations for her noncompliance with other treatment.

Plaintiff also was not compliant with her blood pressure medications.  Tr. 1098 (citing Tr. 548).  While Plaintiff alleges she has severe migraines, her primary care provider recommended Plaintiff see a neurologist, and Plaintiff did not follow-up with a neurologist.  Tr. 1097 (citing Tr. 551).  Plaintiff acknowledges she was referred to a neurologist and did not see one, but does not offer a reason for her failure to seek treatment from a neurologist.  ECF No. 7 at 12.  Plaintiff also declined a referral for physical therapy because she would be out of town, and she did not later pursue physical therapy for her pain symptoms.  Tr. 1098.  Plaintiff states she moved around a lot to avoid homelessness, resulting in interruptions in treatment.  ECF No. 7 at 9.  However, this explanation does not explain why Plaintiff had not followed up with a May 2022 referral during the almost year between the referral and the January 2023 hearing.  The ALJ reasonably found Plaintiff's lack of treatment was inconsistent with her allegations. This was a clear and convincing reason, supported by substantial evidence, to reject Plaintiff's symptom claims.

ORDER - 13

*2. Situational Stressors*

The ALJ found Plaintiff's symptoms were, at least in part, caused by situational stressors. Tr. 1096. An ALJ may reasonably find a claimant's symptom testimony less credible where the evidence "squarely support[s]" a finding that the claimant's impairments are attributable to situational stressors rather than impairments. *Wright v. Colvin*, No. 13-CV-3068-TOR, 2014 WL 3729142, at *5 (E.D. Wash. July 25, 2014) ("Plaintiff testified that she would likely be able to maintain full-time employment but for the 'overwhelming' stress caused by caring for her family members"), *but see Bryant v. Astrue*, No. C12-5040-RSM-JPD, 2012 WL 5293018, at *5-7 (W.D. Wash. Sept. 24, 2012) (concluding Plaintiff's stressors appeared to have a constant presence affecting ability to work on a continuing basis, rather than temporary exacerbation).

The ALJ found many of Plaintiff's complaints of mental health symptoms related to transient situational stressors, including caring for her ill mother and her mother's passing. Tr. 1096. Plaintiff reported anxiety, stress, and depression during those situational stressors, but the remainder of the time she was not on medication for depression and records did not indicate a need for medication. Plaintiff also reported depression and grief due to the death of another family member, but she then reported improvement, and did not seek counseling again for seven months, when she was seen again in January 2022. Tr. 1095-96 (citing Tr.

ORDER - 14

2013-14, 2070).  The ALJ noted Plaintiff only attended two months of counseling before stopping again and reporting improvement, indicating the symptoms were again transient.  Tr. 1096 (citing Tr. 2113).  Plaintiff does not offer a response to this reasoning.  *See* ECF No. 7.  The ALJ reasonably found Plaintiff's symptoms, when not exacerbated by transient situational stressors, were not as severe as Plaintiff alleged.  This was a clear and convincing reason, supported by substantial evidence, to reject Plaintiff's symptom claims.

### 3. *Improvement with Treatment*

The ALJ found Plaintiff's symptoms, with treatment, were not as severe as Plaintiff alleged.  Tr. 1095-97.  The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.913(c)(3); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).

Plaintiff reported improvement in her mental health and physical symptoms with treatment.  Tr. 1095-97.  Plaintiff reported improvement with counseling.  Tr. 1095 (citing Tr. 1721, 1725).  When she was compliant with treatment, Plaintiff had improvement in her sleep apnea symptoms, Tr. 1097 (citing Tr. 1506, 1513), and hypertension, Tr. 1098 (citing Tr. 570, 600).  Plaintiff reported medication

controlled her migraines.  Tr. 1097 (citing Tr. 1722).  Plaintiff contends her migraines decreased with medication but the two per month she continued to experience were still extremely limiting.  ECF No. 7 at 11.  However, Plaintiff cites to a single record to support her contention.  *Id.* (citing Tr. 2147).  The cited record notes Plaintiff reported she was experiencing three migraines per week in April 2022.  Tr. 2147.  Plaintiff also reported medication controlled her pain symptoms, and her diabetes was controlled with conservative treatment and medication.  Tr. 1098 (citing Tr. 1524, 1697-1708, 2095, 2113).  This was a clear and convincing reason, supported by substantial evidence, to reject Plaintiff's symptom claims.

### 4. Activities of Daily Living

The ALJ found Plaintiff's claims were inconsistent with her activities of daily living.  Tr. 1099-100.  The ALJ may consider a claimant's activities that undermine reported symptoms.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001.  If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Molina*, 674 F.3d at 1113.  "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports

ORDER - 16

participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13. Additionally, the ability to care for others without help has been considered an activity that may undermine claims of totally disabling pain. *Rollins,* 261 F.3d at 857. However, if the care activities are to serve as a basis for the ALJ to discredit the Plaintiff's symptom claims, the record must identify the nature, scope, and duration of the care involved and this care must be "hands on" rather than a "one-off" care activity. *Trevizo v. Berryhill*, 871 F.3d 664, 675-76 (9th Cir. 2017).

While Plaintiff alleged she could not leave her home five days out of every work, she reported she could drive in a car, go grocery shopping, and she was able to attend medical appointments at a frequency that is inconsistent with an inability to leave the home most of the week, she sees friends and traveled between states with them multiple times. Tr. 1099-100. While Plaintiff reported being able to sit in a car for only one hour at a time, she road in a car from Washington to Iowa and then back again a few months later. Tr. 1099. Plaintiff also reported having no difficulty interacting with others, handling her own personal care, managing finances, and paying attention and following instructions. *Id.* Plaintiff contends her ability to engage in tasks like shopping and self-care, with some difficulties, are not inconsistent with her allegations, and she traveled due to a need for

housing.  ECF No. 7 at 15-16.  However, the ALJ identified multiple inconsistencies between Plaintiff's reported abilities and her activities.  The ALJ reasonably found Plaintiff's ability to engage in the variety of activities, while also working during portions of the relevant period as discussed *infra*, was inconsistent with Plaintiff's allegations of disabling limitations.

Plaintiff also reported helping provide care for a newborn baby in 2019, watching a dog for a family member in 2021, and caring for her adoptive father in 2022.  Tr. 1677, 1782, 1814, 2142.  Plaintiff contends the ALJ should not have considered the caregiving tasks without considering the duties performed.  ECF No. 7 at 14-15.  However, any error in the caregiving analysis is harmless because the ALJ set forth other supported reasons to reject Plaintiff's symptom claims, as discussed *supra*.  *See Molina,* 674 F.3d at 1115.

### 5.  Ability to Work

The ALJ found Plaintiff's work history was inconsistent with her allegations.  Tr. 1100.  Working with an impairment supports a conclusion that the impairment is not disabling.  *See Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (seeking work despite impairment supports inference that impairment is not disabling).  First, Plaintiff's work ended in 2016 because she needed to care for her mother, indicating her work did not end because of her disability.  Tr. 1100 (citing

Tr. 541).  Plaintiff worked part-time providing transportation to appointments in the summer of 2018.  ECF No. 7 at 14 (citing Tr. 46-47, 61).  Plaintiff then worked full-time for several months in late 2018 to early 2019.  Tr. 1100 (citing Tr. 253-61).  Plaintiff was caregiving for seniors, which required that she help with light cleaning and other assistance like feeding.  Tr. 1100.  Plaintiff contends that she missed work on multiple occasions and ultimately had to quit the caregiving job after three months due to her impairments, which is consistent with her allegations.  ECF No. 7 at 14.  However, the ALJ reasonably found that Plaintiff's ability to work at above a substantial gainful activity level for three months was inconsistent with her allegations of disabling limitations.  This was a clear and convincing reason, supported by substantial evidence, to reject Plaintiff's symptom claims.

### 6. *Inconsistent Objective Medical Evidence*

The ALJ found Plaintiff's claims were only partially consistent with the objective medical evidence.  Tr. 1095-99.  An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence.  *Rollins*, 261 F.3d at 857; *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair*, 885 F.2d at 601; *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).  However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a

claimant's symptoms and their disabling effects.  *Rollins*, 261 F.3d at 857; 20

C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

First, the ALJ found the longitudinal record was inconsistent with Plaintiff's

allegations of disabling mental health symptoms.  Tr. 1095-96.  The records

document only transient complaints of symptoms and mental health treatment, and

Plaintiff reported improvement with treatment, as discussed *supra. Id.*  While

there are some abnormal findings documented on examination, such as labile or

anxious affect, tearfulness, and tangential thinking, the examinations generally

documented normal findings, including normal affect, mood, behavior, speech,

thought processes, appearance, insight/judgment, concentration, and memory.  Tr.

1096 (citing, e.g., Tr. 389, 392, 401, 406).

Second, the ALJ found the record was inconsistent with Plaintiff's

allegations of disabling physical symptoms.  Tr. 1097-98.  The records document

intermittent complaints of migraines, a normal CT scan, unremarkable neurological

findings, and reported improvement with treatment.  Tr. 1097 (citing, e.g., 1722,

2014).  Plaintiff also had generally normal physical examinations, including

normal range of motion, neurological functioning, gait, balance, and muscle

strength.  Tr. 1098 (citing, e.g., 554, 568, 573, 579).  Imaging documented mild to

moderate degenerative changes, and Plaintiff reported improvement with

treatment.  Tr. 1098 (citing, e.g., Tr. 2113, 2157-61).

1   While Plaintiff offers an alternative interpretation of the evidence, the Court

2   may not reverse the ALJ's decision based on Plaintiff's disagreement with the

3   ALJ's interpretation of the record.  *See Tommasetti*, 533 F.3d at 1038 ("[W]hen the

4   evidence is susceptible to more than one rational interpretation" the court will not

5   reverse the ALJ's decision).  The ALJ reasonably found the objective evidence was

6   inconsistent with Plaintiff's symptom claims.  This was a clear and convincing

7   reason, along with the other reasons offered, to reject Plaintiff's symptom claims.

8   Plaintiff is not entitled to remand on these grounds.

9   **B. Medical Opinion Evidence**

10   Plaintiff contends the ALJ erred in rejecting the opinions of Ryan

11   Agostinelli, PA-C; Brett Greenburg, PA-C; and Lindsey Duhamel, ARNP.  ECF

12   No. 7 at 17-20.

13   "Only physicians and certain other qualified specialists are considered

14   '[a]cceptable medical sources.'" *Ghanim*, 763 F.3d at 1161 (alteration in original);

15   *see* 20 C.F.R. § 416.902 (2011)[3] (citing to 20 C.F.R. § 416.913(a)) (acceptable

16

17   ───────────────

18   [3] This section was amended in 2017, effective March 27, 2017, and in 2018,

19   effective October 15, 2018.  *See* 20 C.F.R. § 416.902.  Plaintiff filed her claim

20   before March 27, 2017, and the Court applies the regulation in effect at the time

ORDER - 21

medical sources are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists)).  However, an ALJ is required to consider evidence from non-acceptable medical sources, such as therapists.  20 C.F.R. § 416.927(f).  An ALJ may reject the opinion of a non-acceptable medical source by giving reasons germane to the opinion.  *Ghanim*, 763 F.3d at 1161.

1.  *Mr. Agostinelli*

On July 23, 2022, Mr. Agnostinelli, an examining source, conducted a consultative exam and rendered an opinion on Plaintiff's functioning.  Tr. 2162-66.  Mr. Agostinelli diagnosed Plaintiff with fibromyalgia, chronic back pain, hypertension, diabetes, depression, and anxiety.  Tr. 2165.  He opined Plaintiff can stand and walk for one to two hours in a workday; sit for up to two hours, with a maximum of three to four hours; lift and carry up to 10 pounds occasionally and five pounds frequently; she has moderate limitations in her ability to bend, stoop, squat, lift, carry, and prolonged walking; she should avoid exposure to unprotected heights, moving mechanical parts, operating a motor vehicle, humidity/wetness,

_____

Plaintiff's claim was filed.  *See* 20 C.F.R. § 416.902 (noting changes apply only for claims filed on or after March 27, 2017).

1  dust/odors/fumes/pulmonary irritants, extreme heat/cold, and vibrations.  Tr. 2165-

2  66.  The ALJ gave Mr. Agostinelli's opinion little weight.  Tr. 1102.

3       First, the ALJ found Mr. Agostinelli's opinion was inconsistent with his

4  examination.  *Id.*  A medical opinion may be rejected if it is unsupported by

5  medical findings.  *Bray*, 554 F.3d at 1228; *Batson v. Comm'r of Soc. Sec. Admin.*,

6  359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas*, 278 F.3d at 957; *Tonapetyan v.*

7  *Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Matney v. Sullivan*, 981 F.2d 1016,

8  1019 (9th Cir. 1992).  Furthermore, a physician's opinion may be rejected if it is

9  unsupported by the physician's treatment notes.  *Connett v. Barnhart*, 340 F.3d

10  871, 875 (9th Cir. 2003).  On examination, Plaintiff had a normal gait, and was

11  able to walk on heels and toes, and squat; she had abnormal cervical spine, lumbar

12  spine, and hip range of motion, but full range of motion in all other areas; a

13  negative straight leg raise test; 14 out of 16 positive pressure points; diminished

14  foot sensation to filament but normal reflexes and strength.  Tr. 2164-65.  While

15  Plaintiff contends the ALJ substituted her own interpretation of the medical

16  findings, and cited the "same invalid reasons she rejected Ms. Heitschmidt's

17  testimony," Plaintiff does not offer an analysis as to how the ALJ erred in finding

18  the opinion was not supported by the examination.  ECF No. 7 at 17.  The ALJ

19  reasonably found that the examination, which contains some abnormalities but also

20  numerous normal findings, was inconsistent with a disabling opinion.

Second, the ALJ found Mr. Agostinelli's opinion was inconsistent with the record as a whole.  Tr. 1102.  An ALJ may discredit physicians' opinions that are unsupported by the record as a whole.  *Batson*, 359 F.3d at 1195.  Moreover, the extent to which a medical source is "familiar with the other information in [the claimant's] case record" is relevant in assessing the weight of that source's medical opinion.  *See* 20 C.F.R. § 416.927(c)(6).  The ALJ found Mr. Agostinelli's disabling opinion was inconsistent with the longitudinal record, which documents largely unremarkable physical examination finding, including normal gait, neurological functioning, and balance.  Tr. 1102.  Plaintiff was also able to work for a portion of the relevant period and handle her own daily activities independently.  *Id.*  As discussed *supra*, while the record reflects some abnormalities throughout the record, the medical records contain numerous normal findings as well.

Third, the ALJ gave more weight to other opinions than Mr. Agostinelli's opinion.  Tr. 1102.  The ALJ found the opinions of Drs. Platter, Hale, Linenbach, Moore, and Singerman were more reliable assessments of Plaintiff's functioning.  Tr. 1102.  An ALJ may choose to give more weight to an opinion that is more consistent with the evidence in the record.  20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("[T]he more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."); *Nguyen*, 100 F.3d

at 1464.  Relevant factors when evaluating a medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007).  The ALJ gave great weight to the opinions of Drs. Platter, Hale, Linenbach, Moore, and Singerman.  Tr. 1101.  The ALJ found the opinions were consistent with the largely unremarkable physical examination findings, including normal gait, balance, and neurological functioning, and largely conservative treatment.  *Id.*  The ALJ also found the opinions were consistent with Plaintiff's ability to engage in the activities of daily living described *supra*, which support a finding Plaintiff is able to engage in light work.  *Id.*  As the ALJ offered supported reasons to find the opinions were more supported and consistent with the record, the ALJ reasonably gave more weight to the opinions than Mr. Agostinelli's opinion.

### 2.  Ms. Duhamel and Mr. Greenburg

Ms. Duhamel, a treating provider, rendered three opinions on Plaintiff's functioning.  She stated Plaintiff had been diagnosed with migraines headaches, fibromyalgia, chronic pain, and depression.  Tr. 386.  In September 2019, Ms. Duhamel opined Plaintiff has marked limitations in her ability to sit, stand, walk, lift, handle, and carry; moderate limitations in her ability to see, hear, communicate, understand or follow instructions; and she was severely limited in

ORDER - 25

her overall work ability.  Tr. 555.  In January 2020, she opined Plaintiff was unable

to work in any capacity.  Tr. 1078.  In July 2021, Ms. Duhamel had been diagnosed

with fibromyalgia, chronic kidney disease, hypertension, depression, obstructive

sleep apnea, neuropathy, type two diabetes, and migraine headaches, and opined

Plaintiff was unable to work due to fibromyalgia pain and she is severely limited

(unable to lift two pounds or unable to stand and/or walk).  Tr. 1719-20.  In March

2017, Mr. Greenburg opined Plaintiff would sometimes need to lie down during

the day, she would not be able to work on a regular and continuous basis, and she

would miss four or more day per month of work.  Tr. 386-87.  The ALJ gave Ms.

Duhamel and Mr. Greenburg's opinions little weight.  Tr. 1101.

First, the ALJ rejected the opinions because they opined on issues reserved

to the Commissioner.  *Id.*  A statement by a medical source that a claimant is

"unable to work" is not a medical opinion and is not due "any special

significance."  20 C.F.R. §§ 404.1527(d), 416.927(d)*.*  Nevertheless, the ALJ is

required to consider medical source opinions about any issue, including issues

reserved to the Commissioner, by evaluating the opinion in light of the evidence in

the record and applying the applicable factors.  SSR 96-5p at *2-3.  The ALJ

considered the opinions, and found the disabling opinions were unsupported and

inconsistent with the longitudinal record.  Tr. 1101-02.  As the ALJ considered the

opinions and offered supported reasons to reject them, the ALJ reasonably rejected the opinions in part because they addressed issues reserved to the Commissioner.

Second, the ALJ found the opinions were inconsistent with the longitudinal record.  Tr. 1102.  An ALJ may discredit physicians' opinions that are unsupported by the record as a whole.  *Batson*, 359 F.3d at 1195.  As discussed *supra*, while the record contains some abnormal findings, it also contains numerous largely normal examinations.  The ALJ reasonably found the disabling opinions were inconsistent with the longitudinal record.

Third, the ALJ found the opinions were not supported by explanations nor objective examination findings.  Tr. 1102.  Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole.  *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631.  Therefore, a medical opinion may be rejected by the ALJ if it inadequately supported by medical findings.  *Bray*, 554 F.3d at 1228.  The ALJ noted neither Ms. Duhamel nor Mr. Greenburg provided sufficient rationale to support their disabling opinions, and their treatment records are inconsistent with the opinions as they largely contain unremarkable findings during the time periods when the opinions were rendered.  Tr. 1101-02.  Plaintiff contends the opinions were consistent with the treatment records, which document complaints and

ORDER - 27

observations of fibromyalgia pain and fatigue, migraines, sleep apnea, hypertension, and anxiety.  ECF No. 7 at 19-20 (citing Tr. 388-406, 857-1061). However, Plaintiff cites to over 200 pages of medical records to support her contention and does not explain what specific records and findings support the providers' opinions.  The ALJ reasonably found the opinions were not supported by explanations nor medical records.

Lastly, the ALJ gave more weight to other opinions than Ms. Duhamel and Mr. Greenburg's opinions.  Tr. 1102.  The ALJ found the opinions of Drs. Platter, Hale, Linenbach, Moore, and Singerman were more reliable assessments of Plaintiff's functioning.  Tr. 1102.  An ALJ may choose to give more weight to an opinion that is more consistent with the evidence in the record.  20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).  For the same reasons discussed *supra*, the ALJ reasonably gave more weight to the opinions than Ms. Duhamel and Mr. Greenburg's opinions.  Plaintiff is not entitled to remand on these grounds.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Martin O'Malley as Defendant and update the docket sheet.

2. Plaintiff's Brief, **ECF No. 7**, is **DENIED**.

3. Defendant's Brief, **ECF No. 9**, is **GRANTED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE.**

DATED June 20, 2024.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 29